<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHMUEL G., <br><br>                Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>                Defendant. | Case No. 2:24-cv-11139 (BRM) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiff Shmuel G.'s ("Plaintiff") appeal of the final decision of the Commissioner ("Commissioner")[1] of the Social Security Administration ("SSA") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–83, and for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 402–34. (ECF Nos. 1, 14.) The Commissioner filed an Opposition. (ECF No. 16.) Plaintiff filed a Reply. (ECF No. 17.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Having reviewed and considered the submissions filed in connection with this appeal and having declined to hold oral argument in accordance with Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is **AFFIRMED**.

---

[1] Frank Bisignano became the new Commissioner of the Social Security Administration ("SSA") on May 7, 2025. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Bisignano is substituted as Defendant (at the time of Plaintiff's appeal, Carolyn Colvin was the Acting Commissioner of the SSA). *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

**I.      BACKGROUND**

    **A.  Procedural History**

This matter arises out of the Commissioner's final decision denying Plaintiff's applications for DIB and SSI, dated February 14, 2024. (ECF No. 1 at 2.) Plaintiff filed a Title II application for a period of disability and DIB, and a Title XVI application for SSI on August 1, 2022, and June 23, 2022, respectively. (Transcript of Proceedings ("Tr.") (ECF No. 10) at 17.) Plaintiff alleged disability commencing August 18, 2020, in both applications. (*Id.*) Specifically, Plaintiff alleged his ability to work was limited by the following conditions: "sleep apnea," "memory impairment," "ADHD," "generalized anxiety," "degenerative joint disease bilateral ankles," "adjustment disorder," "PTSD," "major depression," and "cognitive deficits." (*Id.* at 272.)

Plaintiff's claims were denied on September 13, 2022, and denied again at the reconsideration stage on April 5, 2023. (*Id.* at 17, 107, 112, 119, 123.) On May 8, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 17, 126–27.) On January 24, 2024, Plaintiff, as well as an impartial vocational expert, testified at a telephonic hearing before ALJ Trina Moore. (*Id.* at 17, 40–75.) On February 14, 2024, ALJ Moore issued a decision concluding Plaintiff "has not been under a disability within the meaning of the Social Security Act from August 18, 2020, through the date of [the] decision." (*Id.* at 18.) The ALJ's decision became final when the Appeals Council denied Plaintiff's request to review ALJ Moore's decision on October 15, 2024. (*Id.* at 1–6.) Having exhausted his administrative remedies, Plaintiff filed his appeal with this Court, seeking review of ALJ Moore's decision.

    **B.  Administrative History**

Plaintiff was forty years old at the time of the alleged onset date and forty-four years old at the time of ALJ Moore's decision. (Tr. at 29.) He has at least a high school education. (*Id.*) ALJ

2

Moore determined Plaintiff met the Act's insured status requirements between the alleged onset date—August 18, 2020—and the date he was last insured—September 30, 2022. (*Id.* at 18, 20.) ALJ Moore considered the entire record in reaching her decision and employed the five-step process established by the SSA to evaluate whether the Plaintiff was eligible for social security and disability benefits. (*Id.* at 18–30.)

At step one, ALJ Moore determined Plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 18, 2020. (*Id.* at 20.) At step two, ALJ Moore concluded Plaintiff had the following "severe" and "medically determinable impairments": "obesity, degenerative joint disease in the bilateral ankles, amnesia, depressive disorder and anxiety disorder." (*Id.* at 20.) Moreover, the ALJ found such impairments "significantly limited [Plaintiff's] ability to perform basic work activities." (*Id.*) At step three, ALJ Moore determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.* at 20–22.) The ALJ further found Plaintiff has the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can never climb ladders, ropes, scaffolds or crawling. The claimant must avoid constant operation of foot controls bilaterally. The claimant must avoid all exposure to hazards such as unprotected heights and moving mechanical parts. The claimant retains the ability to carry out simple routine tasks on a continuous basis with simple instructions and simple work-related decisions. The claimant is limited to no assembly line or production rate pace work and no work in tandem. The claimant is limited to occasional interaction with co-workers and supervisors but no constant interaction with the public in a customer service setting. The claimant is able to tolerate occasional changes in the work setting and work processes.

(*Id.* at 22–28.) Accordingly, at step four, ALJ Moore concluded Plaintiff is "unable to perform any past relevant work," including work as a "Fundraiser II" and "Food Delivery Driver." (*Id.* at 28–29.) Finally, at step five, ALJ Moore found Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including work as a dishwasher, stocker, and cleaner. (*Id.* at 29–30.)

## II.   STANDARD OF REVIEW

When reviewing a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In other words, a district court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985) (citations omitted). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). To determine whether an ALJ's decision is supported by substantial evidence, a court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to reweigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*,

667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

### III. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.* Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c);

*see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the claimant's specific impairment is not listed, the ALJ will consider the most similar listed impairment to decide whether the claimant's impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, then the ALJ must consider whether the combination of impairments equals any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains

the RFC to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated in 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520c (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him or her from doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his or] her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. An ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step

three involves a conclusive presumption based on the listings." *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146 n.5. An ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19–21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). However, factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. As noted above, substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing *Schaudeck*, 181 F.3d at 431); 42 U.S.C. § 405(g).

## IV. DECISION

Plaintiff raises two primary arguments on appeal. First, Plaintiff argues ALJ Moore's decision does not adequately evaluate the evidence in assessing Plaintiff's RFC. (ECF No. 14 at 9–12.) Specifically, Plaintiff contends the ALJ did not "articulate the persuasiveness of all medical opinions" by "fail[ing] to adequately evaluate the medical source evidence of Marta Billan-Mild LPC, NCC." (*Id.* at 9.) Second, Plaintiff claims ALJ Moore violated her duty to develop the record by misstating, misinterpreting, and mischaracterizing Plaintiff's testimony. (*Id.* at 12–14.)

The Commissioner argues "none of [the] evidence [from Billan-Mild] constitutes medical opinion evidence as that term is defined by the regulations," and because "Billan-Mild did not offer any opinion on Plaintiff's work-related functional abilities, the ALJ did not err by addressing her findings as other medical evidence." (ECF No. 16 at 6.) Additionally, the Commissioner asserts "[t]he ALJ adequately developed the record in this case, and did not mischaracterize or misinterpret Plaintiff's hearing testimony." (*Id.* at 10.) Instead, the Commissioner argues "after considering all of the evidence, the ALJ reasonably concluded that Plaintiff's statements about the intensity and persistence of his symptoms were not consistent with the rest of the medical record." (*Id.* at 10–14.)

### A. Evaluation of Evidence from Billan-Mild

A claimant may support a disability benefits claim with multiple, distinct types of evidence. "Under the Commissioner's regulations, all evidence received is 'evaluate[d] . . . according to the rules pertaining to the relevant category of evidence.'" *Angela S. v. O'Malley*, Civ. A. No. 23-22441, 2024 WL 4563910, at *3 (D.N.J. Oct. 24, 2024) (quoting 20 C.F.R. § 404.1513(a)). "Medical opinion evidence must be evaluated under the factors articulated in 20 C.F.R. § 404.1520c." *Id.* However, "[i]n cases where the evidence submitted by a medical source does

9

not qualify as a medical opinion, the ALJ is not required to apply the specific evaluation framework for medical opinions articulated in 20 C.F.R. § 404.1520c or to specifically weigh the non-medical opinion evidence's persuasiveness, or 'weight.'" *Id.* (citing 20 C.F.R. § 404.1520c). A "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities":

> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

In addition to medical opinion evidence, "two additional categories of evidence from medical sources" exist. *Angela S.*, 2024 WL 4563910, at *4. The first is "objective medical evidence, defined as 'signs, laboratory findings, or both.'" *Id.* (quoting 20 C.F.R. §§ 404.1502(f), 404.1513(a)(1)). The second is "[o]ther medical evidence," which is "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [one's] impairments, . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

"[E]valuations submitted into evidence by a physician or other licensed healthcare worker . . . are not necessarily 'medical opinions' unless they meet [the above] requirements." *Angela S.*,

10

2024 WL 4563910, at *3. Here, the record contains two letters from Billan-Mild dated December 17, 2021, and January 21, 2024 (Tr. at 560, 645–46) as well as Billan-Mild's progress notes documenting Plaintiff's psychotherapy sessions from May 24, 2021, to October 21, 2021 (Tr. 621–44). The Court agrees with the Commissioner; this evidence is more appropriately classified as "other medical evidence" under the regulations' definitions. Billan-Mild does not offer, in this evidence, an opinion meeting the particular requirements of 20 C.F.R. § 404.1513(a)(2). Rather, the letters and progress notes include "judgments about the nature and severity of [Plaintiff's] impairments, [Plaintiff's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). Therefore, ALJ Moore was required to consider this evidence but not under the evaluation framework for medical opinions. *See, e.g.*, *Miller v. Kijakazi*, Civ. A. No. 22-170-E, 2023 WL 6050097, at *1 n.1 (W.D. Pa. Oct. Sept. 15, 2023) ("This other [medical] evidence is to be considered, of course, but not evaluated in the same way as opinion evidence.").

    The Court finds ALJ Moore sufficiently considered the evidence from Billan-Mild in her discussion of Plaintiff's RFC. Indeed, ALJ Moore explicitly recognized and discussed the progress notes and both letters. (Tr. at 25 (noting the record indicates Plaintiff "was engaged in psychotherapy from late May 2021 through late October 2021," and discussing the December 2021 letter in detail), 26–27 (discussing the January 2024 letter in detail).) ALJ Moore's RFC determination was based on "the entire record," including Billan-Mild's letters and progress notes. (*Id.* at 22, 25, 26–28.) Therefore, the Court finds ALJ Moore adequately evaluated the evidence in assessing Plaintiff's RFC.[2]

---

[2] In his Reply brief, Plaintiff argues "[a]ssuming arguendo that the Court deemed the findings and opinions of Marta Billan-Mild, LPC to be 'other medical evidence,'" the ALJ "ignore[d] the recommendation prescription for [P]laintiff to have a twelve-hour a day home health aide." (ECF

### B. The ALJ's Duty to Develop the Record

"Although the Supreme Court has described SSA administrative proceedings as 'adjudicative,' they are not classically so because they are 'non-adversarial,' and at times 'inquisitorial.'" *Anderson v. Comm'r of Soc. Sec.*, No. 21-2009, 2022 WL 1635628, at *2 (3d Cir. May 24, 2022) (footnotes omitted). As such, the ALJ has "a duty to develop a full and fair record[,]" and "must secure relevant information regarding a claimant's entitlement to social security benefits." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995).

A review of the record makes clear the ALJ did not violate her duty to develop a full and fair record. Indeed, the ALJ asked Plaintiff's attorney if the record was complete, and Plaintiff's attorney responded in the affirmative. (Tr. at 45.) Moreover, at the start of the hearing, ALJ Moore stated, "[i]t is extremely important that there is no background noise that affects our ability to obtain a good recording. . . . [I]f we don't obtain a good recording, we will have to do the hearing again." (Tr. at 43–44.) ALJ Moore also allowed Plaintiff to move to a different room to reduce

---

No. 17 at 2.) The Court disagrees. ALJ Moore specifically acknowledged said recommendation multiple times in her decision. (Tr. at 23–24 ("It is noted that although the claimant was prescribed a home health aide to assist with his activities of daily living, the claimant testified that he did not continue with the home health aide's assistance due to other help provided."), *id.* at 25 ("[Billan-Mild] stated that it would be beneficial for [Plaintiff's] symptoms and overall safety to have a home health aide for 12 hours daily to assist him with various tasks he has difficulty completing on his own."), *id.* at 26 ("It was noted that the claimant no longer has a home health aide as he felt anxious."), *id.* at 27 ("Billan-Mild noted that due to the claimant's symptoms and impairments, a home health aide was recommended to [Plaintiff] due to his anxiety-related symptoms, he felt vastly uncomfortable and nervous in his home during the presence of the home health aide . . . . She further noted that he terminated home health aide services and the claimant currently receives daily support from members in his community who have volunteered to help assist him with his functioning and daily tasks."). Moreover, the ALJ considered Plaintiff's "activities of daily living" to support her RFC conclusion. (*Id.* at 27.) She found "[i]n the record including his adult function report as well as at his hearing, the [Plaintiff] stated that he was able to handle a number of his activities of daily living independently." (*Id.*) Specifically, the ALJ found "[Plaintiff] stated that he is able to dress himself, handle his personal care, prepare meals, grocery shop[,] . . . care for his children . . . drive and walk." (*Id.*) Therefore, the Court cannot conclude ALJ Moore's decision was not supported by substantial evidence.

12

background noise. (*Id.* at 44–45.) Later in the hearing, Plaintiff's attorney interrupted Plaintiff's response to a question from the ALJ, and the ALJ again reminded everyone she cannot hear two people talking at once. (*Id.* at 52–53.) The ALJ stated, "I'm trying to be very diligent with reminding everyone to be mindful that this is being recorded and it's important that we get a clear recording." (*Id.* at 53.) At one point, when Plaintiff was "getting emotional," the ALJ asked if Plaintiff needed a moment because they could not understand what he was saying. (*Id.* at 55.)

Plaintiff points to one particular statement from the ALJ—"we will move this along quickly if you just answer the question asked"—to support his argument the ALJ was "curt and short" with him. (ECF No. 14 at 12.) However, after reviewing the transcript, the Court finds the ALJ was attempting to keep the Plaintiff focused on a narrow question after the Plaintiff did not answer the precise question twice in a row. Read in context, ALJ Moore was not unfairly cutting off the Plaintiff's answers. Indeed, as the above examples indicate, ALJ Moore actively worked to reduce simultaneous speaking and to maintain a clear transcript.

Moreover, Plaintiff argues the ALJ, "in a haste," interpreted Plaintiff's reference in the hearing to children potentially making noise upstairs as evidence of Plaintiff caring for his children, while in reality these were children from a separate apartment. (ECF No. 14 at 12–13.) However, as the Commissioner points out, ALJ Moore's conclusion Plaintiff "stated that he is able to . . . care for children" was grounded in other parts of the record. (ECF No. 16 at 12–13.) In particular, when asked in his Function Report if he "take[s] care of anyone else such as a wife/husband, children, grandchildren, parents, friend, other," Plaintiff checked "yes" and wrote he shares joint custody and provides guidance and supervision. (Tr. at 292.)

Additionally, Plaintiff takes issue with the ALJ's assertion "the claimant testified that he did not continue with the home health aid[e]'s assistance due to other help provided," arguing the

13

testimony instead reveals Plaintiff did not continue with the home health aide because "the presence of strangers in his home made him uncomfortable and anxious." (ECF No. 14 at 13.) But when asked at the hearing if he still gets help with his "activities of daily living," Plaintiff described how he receives help from a "very close knit" community rather than a home health aide. (Tr. at 62.) He explained he is "comfortable" with the help from his community and "[i]t's almost like family." (*Id.*) Further, ALJ Moore acknowledged Plaintiff's anxiety surrounding the home health aide multiple times in her decision. (Tr. at 26 ("It was noted that the claimant no longer has a home health aide as he felt anxious."), 27 ("Billan-Mild noted that due to the claimant's symptoms and impairments, a home health aide was recommended to [Plaintiff] due to his anxiety-related symptoms, he felt vastly uncomfortable and nervous in his home during the presence of the home health aide.").) Therefore, the ALJ did in fact consider what Plaintiff argues should have been considered.

## V. CONCLUSION

For the reasons set forth above, the Court finds Plaintiff failed to show ALJ Moore erred in determining Plaintiff was not disabled under the Act. Therefore, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.


**Date: January 9, 2026**                               */s/ Brian R. Martinotti*
                                                                     **HON. BRIAN R. MARTINOTTI**
                                                                     UNITED STATES DISTRICT JUDGE